UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME MENDEL HAILEY,

      Plaintiff,

v.                                                Case Nos. 20-12583, 20-12584

BOGOTA, et al.,                       HON. MARK A. GOLDSMITH

      Defendants.
_____/

**OPINION & ORDER**
**(1) SUMMARILY DISMISSING ACTIONS;**
**(2) DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (Case No. 20-12583, Dkt. 3), (3) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Case No. 20-12583, Dkt. 1); AND (4) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (Case No. 20-12584, Dkt. 4)**

Plaintiff Jerome Hailey, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983.[1] In his complaint, Plaintiff alleges deprivation of his rights under the First, Eighth, and Fourteenth Amendments based on the conditions of his confinement at the Earnest Brooks Correctional Facility and the Woodland Correctional Facility. Plaintiff seeks injunctive relief, the revocation of Defendants' professional licenses, and monetary damages. He has also filed motions seeking injunctive relief (Case No. 20-12583, Dkt. 3), class certification (Case No. 20-12583, Dkt. 1), and appointment of counsel (Case No. 20-12584, Dkt. 4).

For the reasons that follow, the Court summarily dismisses the actions and denies Plaintiff's motions for injunctive relief, class certification, and appointment of counsel.

---

[1] Plaintiff's Case No. 20-12583 was improperly docketed as a separate civil action; the case's pleadings were meant for inclusion with Case No. 20-12584. Accordingly, the Court construes the filings made in Case No. 20-12583 as if they were filed in Case No. 20-12584.

I. **BACKGROUND**

In his complaint, Plaintiff challenges the allegedly unconstitutional conditions of his confinement at the Earnest Brooks Correctional Facility ("LRF") and the Woodland Correctional Center ("WCC"). Plaintiff names as defendants Heidi Washington, the director of the Michigan Department of Corrections ("MDOC"), and the following WCC staff members: (i) Mental Health Unit Chief Bogota, (ii) social worker Sheets, (iii) social worker Ferguson, (iv) psychologist Dinsa, (v) social worker Campbell, (vi) law librarian Meanance, and (vii) Warden Jodi D'Angelo.[2] Compl. at PageId.2-3 (Case No. 20-12584, Dkt. 1).[3]

Plaintiff's sole claim with respect to his incarceration at LRF is that the facility double-bunked inmates in violation of the Centers for Disease Control and Prevention's social-distancing guidelines in response to the COVID-19 pandemic. Id. at PageID.6. Plaintiff asserts that Washington's double-bunking policy deprived him of his Eighth Amendment protection against cruel and unusual punishment. Id. at PageID.11.

The complaint details a variety of alleged constitutional violations stemming from Plaintiff's incarceration at WCC, to which he was transferred on August 19, 2020, for the purpose of mental health care. Id. at PageID.6. Primarily, Plaintiff challenges the mandatory minimum 72-hour hold in isolation imposed on all mentally ill inmates upon their arrival at WCC, and the resultant deprivations (e.g., loss of personal and legal possessions, ability to file grievances, loss of privileges).

---

[2] With the exception of Washington and D'Angelo, Plaintiff indicates that the other Defendants' first names are unknown. Compl. at PageID.2-3.

[3] D'Angelo is not named as a defendant in the caption or in the body of the complaint. However, Plaintiff's motion for injunctive relief and accompanying affidavit refer to her as a "civil complaint defendant." Mot. for Inj. at PageID.20-21.

The complaint sets forth the following factual allegations, which the Court presumes to be true for purposes of the present Opinion. On August 20, 2020, the day after Plaintiff arrived at WCC, the treatment team attempted to conduct a routine mental health evaluation of Plaintiff by communicating through his cell door. Id. at PageID.7. When Plaintiff refused to discuss the details of his confidential mental health issues through the door, Mental Health Unit Chief Bogata informed him that WCC does not call inmates from their cells to perform the evaluation pursuant to Warden D'Angelo's operating policies. Id. Additionally, Bogata informed Plaintiff that the 72-hour isolation period was mandatory, and that a failure to cooperate could result in Plaintiff being held in isolation for a much longer duration. Id.

On August 21, 2020, social worker Sheets informed Plaintiff that he would be released from isolation and would be able to obtain his personal property more quickly if he consented to treatment. Id. Plaintiff signed a consent form. Id. On August 24, as social worker Ferguson and other staff members approached Plaintiff's cell, Ferguson stated, "he's not ready," and moved to the next cell. Id. at PageID.8. The following day, Sheets informed Plaintiff that he was getting a "step down" to restraint status. Id. Sheets also informed Plaintiff that his personal property would not be returned to him until Plaintiff was moved off the isolation pod, which might be delayed due to the pandemic. Id. Plaintiff told Sheets that he required his personal property to meet a filing deadline in a case pending before the Sixth Circuit. Id. Sheets, however, responded, "That's how things run here. I'm sorry if you miss your deadline." Id.

On August 27, 2020, Plaintiff asked Sheets, Ferguson, and psychologist Dinsa for materials to submit grievances regarding his isolation and deprivation of personal property, yard privileges, and telephone privileges. Id. Defendant Ferguson responded that pursuant to WCC policy,

3

prisoners in isolation are not permitted access to writing materials, grievances, legal materials, or healthcare kites. Id. Plaintiff then sought to withdraw his consent to treatment. Id.[4]

On August 28, 2020, Plaintiff again informed Sheets that he required his legal materials and a pen in order to meet a court deadline in a few days. Id. at PageID.9. Plaintiff also requested access to grievances and kites and reiterated his request to withdraw his consent to treatment. Id. Sheets wrote down Plaintiff's requests and informed him that D'Angelo would have to approve them. Id. Later that day, Plaintiff was placed "back" in isolation after Sheets reported that Plaintiff threatened to cut his wrist with a razor. Id. Though the complaint states that Plaintiff was placed "back" in isolation, it does not indicate when or whether he left isolation prior to August 28. In any event, Plaintiff alleges that he remained in isolation for a total duration of two weeks. Mot. for Inj. at PageID.20.

During his time in the isolation pod, Plaintiff sought access to the law library and legal services to complete his court filings. Compl. at PageID.9-10. Law librarian Meanance told him that a WCC policy implemented by D'Angelo prevented inmates in the isolation pod to access the law library, and that Plaintiff could not gain access until he was reassigned to another pod. Id. Due to his lack of access to his legal materials or the law library, Plaintiff asserts that he missed a court deadline in his case pending before the Sixth Circuit. Id. at PageID.11, 14. Similarly, Plaintiff contends that he was unable to access the grievance process due to his isolation and being placed on modified grievance status, which requires permission before filing a grievance. Id. at PageID.8, 18-19

---

[4] Despite his allegation that he was denied writing materials to submit grievances, Plaintiff wrote two kites to the grievance coordinator, on August 26 and September 2, 2020, enumerating his complaints and requesting grievance forms. Compl. at PageID.18-19; Mot. for Inj. at PageID.19. Additionally, Plaintiff related his grievances to a health manager on August 29, 2020; the health manager instructed an aide to document Plaintiff's complaints. Compl. at PageID.12.

4

Plaintiff claims that he was deprived of his First, Eighth and Fourteenth Amendment rights based on the allegedly unconstitutional conditions of his confinement at WCC. Id. at PageID.11. Specifically, Plaintiff argues that (i) he was denied access to the courts; (ii) he was deprived of his personal possessions, adequate food, hygiene supplies, and privileges such as access to the yard, telephone, and mail; (iii) he was denied access to mental health care and that his privacy was invaded; and (iv) he was denied access to a grievance procedure. Id. at PageID.7-8; Mot. for Inj. at PageID.20.

In addition to his complaint, Plaintiff has filed several motions. First, he filed a motion for injunctive relief temporarily revoking his detention under 18 U.S.C. § 3142(i)(4), citing the danger posed by his incarceration during the COVID-19 pandemic and his inability to litigate his pending lawsuits. Second, Plaintiff seeks certification of a class of mentally ill prisoners whose rights under the Eighth and Fourteenth Amendments have been violated by Defendants' discriminatory treatment and other policies. Finally, Plaintiff filed a motion seeking appointment of counsel.

## II. STANDARD OF REVIEW

Plaintiff has been granted leave to proceed without prepayment of the filing fee for this action due to his indigence. 10/2/20 Order (Dkt. 3). Under the Prison Litigation Reform Act ("PLRA"), the Court is required to dismiss an in forma pauperis complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). Similarly, the court is required to dismiss a complaint seeking redress against government entities, officers, and employees that it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b).

"In determining whether a prisoner has failed to state a claim, [courts] construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). "A document filed pro se is 'to be liberally construed,' and . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-556 (2007) (citations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.     DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (internal marks omitted). Moreover, "[b]ecause vicarious liability is inapplicable [in] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Here, as described above, Plaintiff alleges that he has been deprived of his Eighth Amendment rights as a result of LRF's policy of double bunking its inmates during the pandemic. Additionally, Plaintiff asserts that he has been deprived of his First, Eighth, and Fourteenth Amendment rights based on various conditions of his confinement at WCC. The Court evaluates each of these claims in turn.

### A. Double Bunking

Plaintiff asserts that MDOC Director Washington was deliberately indifferent to the risks of double bunking during the pandemic, in violation of the Eighth Amendment. Compl. at PageID.11. Construed liberally, the complaint asserts a claim that Washington was deliberately indifferent by failing to implement a policy prohibiting double bunking to promote social distancing during the pandemic.

It is well established that where a state exercises its authority in a manner that "restrains an individual's liberty [such] that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation marks omitted). Thus, the conditions under which a prisoner is confined are subject to scrutiny, and "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

To establish deliberate indifference, an inmate must satisfy both an objective and subjective prong. Id. at 834. The objective prong requires an inmate to show that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of

7

serious harm." Id. And the subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837.

The Sixth Circuit has acknowledged that the pandemic objectively "creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." Wilson v. Williams, 961 F.3d 829, 840 (6th Cir. 2020). The crux of the subjective prong, by contrast, is whether the prison "'responded reasonably to th[is] risk.'" Id. Since the beginning of the pandemic, MDOC has implemented a number of precautionary measures to protect staff members and prisoners including, among other things, the use of personal protective equipment, screening individuals before entry into a correctional facility, and quarantine of infected prisoners.[5] In the face of these precautionary measures, it cannot be said that permitting a practice of double bunking during the pandemic, standing alone, rises to the level of deliberate indifference on the part of Washington. Indeed, Plaintiff does not allege that these precautions are unreasonable or insufficient under the circumstances.

Consequently, Plaintiff has failed to state a claim against Washington with respect to the conditions of his confinement at LRF.

**B.     Access to Courts**

Plaintiff also asserts that Defendants violated his First Amendment right to access the courts by denying him access to his legal materials, pen and paper, and the law library, pursuant to WCC policy authored by D'Angelo. Compl. at PageID.11.

The First Amendment guarantees prisoners a right of access to the courts extending "to direct appeals, habeas corpus applications, and civil rights claims only." Rodgers v. Hawley, 14

---

[5] See Director's Office Memorandum 2020-30R, May 13, 2020, available at https://perma.cc/Z3A2-LY65.

8

F. App'x 403, 409 (6th Cir. 2001). "Prison officials deny prisoners their right to access the courts by depriving them of a 'reasonably adequate opportunity' to challenge their sentence or conditions of confinement." Id. (citing Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 354-355 (1996)). Establishing a violation of that right, however, requires a concrete or actual injury, not a "theoretical" one. Id. That is, the plaintiff must show that "the conduct hindered his efforts to pursue a nonfrivolous legal claim." Id. An inmate must make the specific claim that he was adversely affected or that the litigation was prejudiced, for instance, by "having a case dismissed, being unable to file a complaint, [or] missing a court-imposed deadline." Harbin-Bey, 420 F.3d at 578 (citing Jackson v. Gill, 92 F. App'x 171, 173 (6th Cir. 2004)).

Here, Plaintiff claims that he missed a deadline in his appeal to the Sixth Circuit in Hailey v. Blackman, Case No. 20-1685 (6th Cir.), from the Western District of Michigan, Hailey v. Blackman, Case No. 1:18-cv-00464. Compl. at PageID.14, 22-23. But Plaintiff does not identify what deadline was missed. Neither the district court docket nor the Sixth Circuit docket shows any indication of a missed deadline.[6] Indeed, Plaintiff met the deadline by which he was to file his opening brief before the Sixth Circuit. In addition, Plaintiff filed with both the Sixth Circuit and the Western District of Michigan notifications of a change in address dated September 3, 2020—after purportedly missing the deadline—but failed to mention any difficulty accessing legal services or meeting deadlines. Notification, ECF No. 9, Hailey v. Blackman, Case No. 20-1685 (6th Cir.); Notification, ECF No. 62, Hailey v. Blackman, Case No. 1:18-cv-00464 (W.D. Mich.).

Because Plaintiff's conclusory allegation that he missed a Sixth Circuit deadline is soundly contradicted by the record, he has not established that his right to access the courts was violated.

---

[6] "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." United States v. Mont, 723 F. App'x 325, 327 n.3 (6th Cir. 2018).

### C. Conditions of Confinement

Next, Plaintiff claims violation of his Eighth and Fourteenth Amendment rights based on his placement in isolation and resultant deprivation of his personal possessions, adequate food, hygiene supplies, and privileges such as access to the yard, telephone, and mail.[7] Compl. at PageID.7-8; Mot. for Inj. at PageID.20. The Court evaluates Plaintiff's Eighth Amendment and Fourteenth Amendment claims in turn.

The Supreme Court has held that prison conditions may be uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. Farmer, 511 U.S. at 833; see also Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). But, as indicated above, the Eighth Amendment does require that prison officials "provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'" Id. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). The Sixth Circuit has described the standard as follows:

> Punishment may not be barbarous nor may it contravene society's evolving standards of decency. The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the unnecessary and wanton infliction of pain. The deprivation alleged must result in the denial of the minimal civilized measure of life's necessities. The Eighth Amendment is concerned only with deprivations of essential food, medical care, or sanitation or other conditions intolerable for prison confinement.

---

[7] Plaintiff mentions that he was deprived of a number of personal possessions, including religious items (a prayer rug and Qu'ran). Compl. at PageID.9. However, he does not allege that deprivation of these religious items was a deprivation of his First Amendment rights. Because no such claim is asserted, there is no need to address the plausibility of any such claim.

Richmond v. Settles, 450 F. App'x 448, 454-455 (6th Cir. 2011) (citations and internal marks omitted). Thus, to establish an Eighth Amendment violation, the prisoner must allege that he was deprived of the minimal necessities of civilized life and that prison officials were deliberately indifferent to his needs. Powell v. Washington, 720 F. App'x 222, 227-228 (6th Cir. 2017) (citing Richmond, 450 F. App'x 448, 454-455 (6th Cir. 2011)).

Plaintiff asserts that he was held in isolation for two weeks, during which he was deprived of his personal possessions, adequate food, hygiene supplies, and privileges such as access to the yard, telephone, and mail. Standing alone, Plaintiff's placement in segregation does not amount to an Eighth Amendment violation. Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008) ("Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." (internal quotation marks omitted)).

Nor do the various deprivations Plaintiff complains of amount to deprivations of the minimal necessities of civilized life. In Richmond, a prisoner placed in segregation for six days was deprived of his personal property, a mattress and bedding, hygiene supplies and showers, and seven meals. 450 F. App'x at 455-456. None of these circumstances was considered an Eighth Amendment violation. Id. Plaintiff's experience is similar. Plaintiff alleges that he was expected to eat the food provided with his hands, and that it was not adequate "finger food." Mot. for Inj. at PageID.20. However, the Eighth Amendment is not violated unless food deprivation has an adverse effect on a plaintiff's health, Richmond, 450 F. App'x at 456, and Plaintiff has not made any such allegations. And although Plaintiff claims a lack of hygiene supplies, he also alleges that showers were available to him three times a week. Mot. for Class Cert. at PageID.3. Deprivation of a shower and other personal hygiene items for a "brief span of time" does not rise to the level

11

of an Eighth Amendment violation. Richmond, 450 F. App'x at 455. Accordingly, Plaintiff has not stated a plausible Eighth Amendment claim.

The Due Process Clause of the Fourteenth Amendment "does not protect every administrative slight that occurs behind prison walls . . . . [and] requires process only when a life, liberty, or property interest is at stake." Harden-Bey, 524 F.3d at 791 (internal quotation marks omitted). Yet "[e]ven after a proper conviction and sentence, an inmate still retains a liberty interest, guarded by due process, with respect to state-imposed prison discipline that rises to the level of an atypical and significant hardship on the inmate." Id. at 792 (internal quotation marks omitted). Thus, a prisoner's placement in segregation can pose due process concerns when the discipline is "unusual and substantial 'in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). In determining whether placement in segregation imposes an "atypical and significant hardship," courts evaluate "the nature of the more-restrictive confinement and its duration." Id. (emphasis in original).

With respect to the duration of Plaintiff's time in isolation, he alleges generally that he was held in isolation for two weeks. Mot. for Inj. at PageID.20.[8] A two-week period in isolation does not, standing alone, represent an "atypical and significant hardship." See Sandin, 515 U.S. at 484 (holding that 30 days in administrative segregation was not an atypical and significant hardship); Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010) (holding that "being placed in administrative segregation [for 61 days] does not make it 'atypical and significant'"). Nor, as discussed above, do the various deprivations Plaintiff complains of impose atypical or significant

---

[8] Although he also states that on August 28, 2020, Sheets had him placed "back" in isolation, Compl. at PageID.9, suggesting that he was transferred out of isolation for some time, the Court is obligated to view the facts in a light favorable to Plaintiff. See Harbin-Bey, 420 F.3d at 575. Accordingly, for purposes of this opinion, the Court credits Plaintiff's assertion that he was placed in segregation continuously for two weeks.

hardships, because they did not interfere with "the minimal civilized measure of life's necessities." See Rhodes, 452 U.S. at 347. Thus, Plaintiff has failed to set forth a plausible Fourteenth Amendment claim.

### D. Access to Mental Health Care and Invasion of Privacy

Plaintiff next alleges that he was denied access to mental health care services, and that his privacy rights were violated because Defendant Bogota insisted on conducting Plaintiff's psychological evaluation through his cell door when he first arrived at WCC. Compl. at PageID.7, 10. Bogota told Plaintiff that if he did not comply, he would be held in isolation longer. Id. at PageID.7. Plaintiff's allegations, analyzed against both the Eighth and Fourteenth Amendments, do not establish a violation of his constitutional rights.

To prevail on an Eighth Amendment claim, a prisoner must show that he faced an objectively serious risk of harm, and that the defendant official acted with "'deliberate indifference' to [his] health or safety." Mingus v. Butler, 591 F.3d 474, 479-480 (6th Cir. 2010) (citing Farmer, 511 U.S. at 834) (applying the deliberate indifference standard to medical claims); see also Helling, 509 U.S. at 35 (applying the standard to conditions of confinement claims)). As described above, to establish deliberate indifference, an inmate must satisfy both an objective and subjective prong. Farmer, 511 U.S. at 834. The objective prong requires an inmate to show that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm." Id. And the subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837.

In the healthcare context, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

13

recognize the necessity for a doctor's attention." Blackmore v. Kalamazoo Cty., 390 F.3d 890, 897 (6th Cir. 2004) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)) (other citations omitted). The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citing Farmer, 511 U.S. at 837).

Plaintiff alleges that when Defendants were made aware of Plaintiff's complaints by a nurse, Campbell, Dinsa, and Bogota stated that since Plaintiff was not mentally ill, they should "get him outta here." Compl. at PageID.12. However, Plaintiff does not specifically allege that Defendants knew of and expressly disregarded a serious health risk. Nor does he identify any necessary treatment that he requested and was denied. Based on the current pleadings, Plaintiff is unable to demonstrate that Defendants were deliberately indifferent to his mental health treatment needs.

Plaintiff's pleadings regarding the non-confidential setting of his mental health evaluation primarily concern the alleged invasion of his privacy. Id. at PageID.7. Plaintiff alleges that the practice of speaking to a healthcare provider through his cell door interfered with his ability to access healthcare. Id. Again, however, he does not cite any essential care denied or delayed by this practice.

Further, the invasion of Plaintiff's privacy in this context does not rise to a constitutional violation. There are no general constitutional protections against the disclosure of private information. Wilson v. Collins, 517 F.3d 421, 429 (6th Cir. 2008). Instead, a right to informational privacy is protected by the Fourteenth Amendment only when a plaintiff's fundamental rights are

implicated. Lee v. City of Columbus, Ohio, 636 F.3d 245, 260 (6th Cir. 2011). The Sixth Circuit "has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm . . . , and (2) where the information released was of a sexual, personal, and humiliating nature . . . ." Id. (quoting Lambert v. Hartman, 517 F.3d 433, 440 (6th Cir. 2008)) (internal quotation marks omitted). Plaintiff's allegations do not implicate either of those interests; for instance, he has not asserted that corrections officers' or other inmates' awareness of his mental illness would present a risk to his personal safety.

Because Plaintiff implicates neither of those two interests, he has suffered no constitutional injury in the invasion of his privacy. See Townsend v. Reaume, No. 1:13-CV-729, 2013 WL 3872173, at *5 (W.D. Mich. July 25, 2013) (holding that a social worker's disclosure to a prison employee of a prisoner's mental health information did "not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment").

   **E.**   **Interference with the Grievance Process**

Plaintiff next alleges that inmates in isolation at WCC are denied access to the grievance process. Compl. at PageID.8, 18-19. "[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures. Walker v. Michigan Dep't of Corr., 128 F. App'x 441, 445 (6th Cir. 2005) (citations omitted). Nor is there an "inherent constitutional right to an effective prison grievance procedure." Young v. Gundy, 30 F. App'x 568, 569-570 (6th Cir. 2002). Because Plaintiff has no liberty interest in the grievance process, Defendants' alleged interference with his ability to submit grievances did not deprive him of due process.

In any event, despite Plaintiff's contention that he was denied access to the grievance process and had no access to pens or paper, he alleges that he was able to write two kites to the

15

facility's grievance coordinator. Mot. for Inj. at PageID.19. He also complained to the Health Manager about the violation of his rights, and she ensured that his complaints were documented. Compl. at PageID.12. These experiences, as well as Plaintiff's ability to file this lawsuit unhindered, indicate that Plaintiff suffered no injuries from being denied access to the grievance procedure for a limited period of time. Accordingly, Plaintiff has failed to state a due process claim on these grounds.

### F. Motions for Injunctive Relief, Class Certification, & Appointment of Counsel

In Plaintiff's request for injunctive relief, he requests release to home confinement pursuant to 18 U.S.C. § 3142(i)(4) due to the risk of being infected with COVID-19 while incarcerated. Mot. for Inj. at PageID.17. He further argues that release is necessary for him to receive mental health counseling and to pursue pending litigation, given that his access to legal research was restricted. Id. at PageID.16.

However, the statutory provision on which Plaintiff relies is a federal criminal statute permitting the temporary release of a federal defendant where "such release [is] necessary for preparation of the person's defense or for another compelling reason." Because Plaintiff is a state prisoner sentenced under state law, he is not entitled to relief under § 3142(i)(4). Cf. Stephenson v. Foy, No. 20-CV-13105, 2021 WL 243156, at *2 (E.D. Mich. Jan. 25, 2021) (finding that a state prisoner was not entitled to compassionate release under 18 U.S.C. § 3582(c)).

Additionally, the relief Plaintiff seeks through this motion—release from prison—is not available under § 1983. A challenge to the fact or duration of confinement must be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a

determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). For all these reasons, Plaintiff's motion for injunctive relief is denied.

Next, Plaintiff moved for class certification, alleging that at WCC, mentally ill prisoners are humiliated and degraded, improperly held in restraints or in isolation for "months, and some even years," and denied many privileges and services. Mot. for Class Cert. at PageID.2. Plaintiff asserts that the majority of prisoners are heavily medicated, if not over-medicated. Mot. for Inj. at PageID.20. Though Plaintiff's allegations are concerning, he has not alleged that he has been subjected to most of these deprivations, especially not for a duration of months or years. As a result, his claims are not typical of the claims of the class, and he is, therefore, not an appropriate representative party. See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., 722 F.3d 838, 850 (6th Cir. 2013) (noting that "[t]ypicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims," such that "by pursuing their own interests, the class representatives also advocate the interests of the class members"). Further, pro se prisoners are not considered proper class representatives. See Heard v. Caruso, 351 F. App'x 1, 15 (6th Cir. 2009). Consequently, Plaintiff's motion for class certification is denied.

Finally, Plaintiff seeks appointment of counsel. Mot. for Appointment of Counsel. Because the cases will be dismissed, this motion is denied as moot.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff has failed to state a claim for which relief may be granted. Accordingly, the complaint in Case No. 20-12584 is summarily dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The case that was improperly docketed, Case No. 20-12583, is likewise dismissed. And for the reasons explained above, the

17

Court denies Plaintiff's motions for appointment of counsel (Case No. 20-12584, Dkt. 4), class certification (Case No. 20-12583, Dkt. 1), and injunctive relief (Case No. 20-12583, Dkt. 3).

Finally, if Plaintiff elects to appeal this decision, he may not proceed without prepayment of the fees and costs on appeal because an appeal would be frivolous and could not be taken in good faith. See 28 U.S.C. § 1915(a)(3); Coppedge v. United States, 369 U.S. 438, 445 (1962).

SO ORDERED.

Dated: February 11, 2021　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2021.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager